### CITY OF EMPORIA v. SARAH BURNS.
#### No. 13,264.   (73 Pac. 94.)
##### SYLLABUS BY THE COURT.

CITIES AND CITY OFFICERS—*Obstruction of Street.* If the disturbed condition of a city telephone and fire-alarm system indicates to the city officials that the fire-alarm wire may be broken and down in the street, it is their duty to investigate the cause of the disturbance to ascertain if the wire constitutes a dangerous obstruction to the use of the street; and notice of a disturbance of the system caused by the fire-alarm wire's being broken and down will be notice of the obstruction of the street.

Error from Lyon district court; CHARLES B. GRAVES, judge *pro tem.*   Opinion filed July 10, 1903.   Affirmed.

*J. Harvey Frith,* and *Buck & Spencer,* for plaintiff in error.

*Kellogg & Madden,* for defendant in error.

The opinion of the court was delivered by

BURCH, J. : This controversy was before the court for consideration in *Burns v. Emporia,* 63 Kan. 285, 65 Pac. 260, where the substantial facts were stated. The case was then remanded for a new trial because

the district court had undertaken to determine as matters of law certain questions which should have been submitted to the jury as matters of fact. Those questions related to the subject of notice to the city, actual and constructive, of the dangerous condition of its street. The same subject is again the apple of discord. Upon the second trial, the evidence relating to notice was submitted to the jury, who found the facts against the city, and a careful analysis of the testimony shows it to be sufficient to sustain the verdict.

The source of notice to the city of the fact that the wire was down in the street was a disturbed condition of the telephone and fire-alarm wires connecting the city fire station with the water-works, some two miles distant. It is argued that the wire which caused the injury was used for the sole purpose of communicating alarms of fire ; that the city might allow the wire to become so far out of repair as to be utterly worthless for the single purpose for which it was maintained without violating any duty to the plaintiff or to other residents of the city ; and that notice of defective fire-alarm service was not notice of an obstructed street. The evidence quite effectively disposes of this argument. Frank Newell, who was in charge of the city's fire-extinguishing apparatus on the day of the accident, testified that after a fire on the afternoon of that day he undertook to communicate with the engineer at the water-works. His examination then proceeded :

"Ques. And at the time you rang him up, you and he ascertained the fact that the wire was down? Ans. Yes, we knew there was something wrong with it ; we did n't know the wire was broken in two, only we knew there was a circuit on the fire-alarm wire and the telephone wire.

"Q. That would indicate that it was down? A.

Yes, that would indicate that it was down or crossed some place.''

Upon cross-examination he further testified :

"Q.  When did you have any occasion, after getting through with the fire and getting back, to use that particular wire?  A.  When we got back from the fire and I put up the team and got things straightened up in the house so that I could leave them, I went up-stairs to ring Bacon up, and I found when we rang the drop at the water-works dropped.

"Q.  Then what did you learn?  A.  We then found out that the wire was either down or crossed some place.

"Q.  It didn't work?  A.  No, it didn't work, nor would n't work.

"Q.  You were not suspicious that the wire was broken?  A.  We didn't know; only we knew there was trouble with the fire-alarm wire and it didn't work.

"Q.  You knew it had occurred before?  A.  Yes.''

Frank Bacon, the water-works engineer, testified upon cross-examination as follows :

"Q.  How far apart on the poles were those wires? That is, how much higher was the alarm wire than the telephone wire?  A.  I couldn't say.  Probably from eighteen to twenty inches.

"Q.  .  .  .  If in either ringing or calling your attention over the telephone wire it would in fact set off your fire-alarm over at your end of the line, that would indicate to your mind that the alarm wire had broken and dropped down onto the telephone wire?  A.  It would not necessarily be broken ; it might have been crossed without being broken.

"Q.  Could it ever well be crossed without being broken, if the distance was as far apart as you say— eighteen to twenty inches?  A.  No, sir.

"Q.  In order to drop down onto the telephone wire it would have to be broken?  A.  No, sir ; sometimes the wires will come loose from the post.''

It is true that Bacon's subsequent testimony was much opposed to that just quoted, but the jury heard the first answers as well as the later ones.

From this evidence it is apparent that the city employees knew that there was a likelihood that the wire .was broken and down in the street. Such was one of a very limited number of inferences to be drawn from the physical facts with which they were dealing, and they did not know but that it was the true one. If such were the condition of the wire it was certain to be dangerous to travel. It was the duty of the city, therefore, to investigate, and an investigation would have disclosed the fact that the wire was actually broken, down in the street, and a serious menace to the safety of persons walking and driving along such street. Under these circumstances the city must be held to have had all the information it should have acquired by the exercise of due diligence, and the defendant was not prejudiced by the findings of the jury as to the quantity of information possessed by the mayor of the city when the state of the alarm system was reported to him. A close examination of the record discloses that other special findings are not vulnerable to the attack made upon them.

The second instruction to the jury stated in order the facts of the accident, and it is challenged as assuming as an admitted fact that the fallen wire was the cause of the horse's running away. The instruction however assumes nothing. It merely states undisputed facts and leaves the jury to determine from all the evidence, which included the conduct of the horse at the time, cuts found on him afterward, and the manner in which the buggy was involved in the wire, if the wire was the cause of the horse's fright, and, therefore, of the injury.

The claimed defects of other instructions are not of such vital importance as to require a new trial of the action, and the judgment of the district court is affirmed.

All the Justices concurring.