No. 24,296.

ROBERT FOLLOWILL and MARGARET A. FOLLOWILL, *Appellees*, v. (THE KANSAS CONSTRUCTION COMPANY) THE KANSAS GAS & ELECTRIC COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Exposed Uninsulated Electric Wires—Death of Boy—Sufficient Petition.* In an action by parents for the death of their minor son, who was killed by an electric shock while bathing in a public stream and while climbing upon a floating scow to dive therefrom, upon which scow there lay certain uninsulated wires heavily charged by electricity, which electric power was supplied by one of defendants and used by the other defendant to operate a sand pump, the evidence of negligence examined, and held sufficient as against a demurrer thereto.

2. SAME—*Wantonness Charged.* The allegations of the petition examined, and held sufficient to raise an issue of defendants' wantonness, and held further, that the raising of such issue was favorable rather than prejudicial to defendants.

3. SAME—*Instructions.* The instructions complained of examined, and held not to be erroneous.

4. SAME—*Language of Court in Instruction Not Prejudicially Erroneous.* The court's colloquial characterization of the unguarded switch and the uninsulated and sagging wires and the death-dealing electric current which killed the plaintiffs' son as a "mantrap" was not inapt and not prejudicial to appellant.

Appeal from Sedgwick district court, division No. 1; THOMAS E. ELCOCK, judge. Opinion filed April 7, 1923. Affirmed.

*A. L. Noble, W. A. Ayres, Hal M. Black;* and *C. A. McCorkle,* all of Wichita, for the appellant.

*Andrew G. Washbon,* of Wichita for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action for damages was brought by plaintiffs for the death of their minor son through the alleged negligence of the defendants. The lad met his death while bathing in the Arkansas river by coming in contact with a live wire stretched from a pole on the river bank to a sandboat in the river. The wire was supported on a series of small scows or floats, and the plaintiffs' son, who had been swimming near by, approached one of these scows, probably intending to climb upon it and use it as a diving platform. As he started to draw himself up on the scow, one of his hands came in contact with the live wire and he immediately sank into the water and died.

The Kansas Construction Company owned the wires, the scows and the sandboat, and was engaged in pumping sand from the river for commercial purposes. The Kansas Gas & Electric Company was the utility company which furnished the electric power which operated the sand pump. The electrical company's wires terminated at a transformer set upon a pole on the river bank. There was a switch on the pole, located about eight feet from the ground, where the electric current could be turned off as the sand company's workmen left their work at the close of the day. The switch was not enclosed, and any meddlesome person could operate it, and this sometimes had occurred. The accident occurred in the evening after working hours. It was in midsummer and many boys and young men were wont to swim in the river in the vicinity of the pumping plant. It was shown that the insulation of the wires had worn off in places, and that the wires sagged to within a foot above the deck of the scow where the boy was killed, and that the deck of the scow was about a foot above the water.

The jury rendered a verdict against both defendants, and made special findings:

"1. Do you find that the defendant, The Kansas Gas & Electric Company was guilty of any negligence that constituted a proximate cause of the accident to Walter Followill?

"A. Yes.

"2. If you answer the first question in the affirmative, state particularly what acts or omissions of the electric company constituted such negligence.

"A. We hold that the manner and mode of installation was such that it should have been apparent to an agent of the company that it was likely to fall out of repair and become dangerous to the extent that the court defines as wantonness.

"3. State whether the switch which was attached to the pole on the bank of the river was the property of the Gas & Electric Company.

"A. The evidence does not disclose clearly the ownership.

"4. State whether Walter Followill was killed from electric shock by touching a live wire on the float.

"A. Yes.

"5. Who was the owner of the electric wires which ran from the pole on the bank to the sand boat?

"A. The Kansas Construction Company."

Judgment was entered accordingly. The electric company alone appeals.

The first error it assigns relates to the overruling of its demurrer to the evidence. All the evidence, such as it was, was admitted without objection. It fairly showed that the electric current was supplied by the one defendant and used by the other in a heedless and dangerous manner. Neither defendant gave any regard to the dangerous nature of the agency. It was of no importance in this lawsuit which of the defendants actually owned the electric switch. It was left unlocked and unguarded, so that any meddler could tamper with it. The appellant heedlessly supplied the death-dealing current to the slipshod, ragged and uninsulated equipment of the sand company. The electric company installed the equipment, and its experts must have known that it would speedily become dangerous through the wear and tear of weather and use in such a business as the said company's. The appellant must have foreseen that the equipment would get out of order and become dangerous, for in its contract to supply the electric energy it stipulated:

"6. All wiring, piping, and apparatus shall be installed and maintained to the satisfaction of the Engineering Department of the [electric] company, and also in accordance with government regulations. 7. Consumer agrees to allow the properly authorized agents of the company to have free access at reasonable hours to said premises for the purpose of inspection."

The electric company never gave the installation any attention after it established it, some two years before, and much of the material installed was several years old when it was put in place. The appellant's superintendent testified that it was his duty to look after the distribution of the electric current. That current should not have been distributed to such a defective outfit as that of the sand company. This case is somewhat analogous to that of *Edwards v. Kansas City,* 104 Kan. 684, 180 Pac. 271, and *Swayze v. City of Augusta,* 108 Kan. 785, 197 Pac. 208, 210. While it was

conceded at the trial that the boy was a trespasser, yet he was no more than technically so; what he did was no substantial invasion of the property of the sand company; and since the river thereabout was a public stream and notoriously used as a swimming place for the boys and young men of the neighborhood, it cannot be arbitrarily said that the careless release and inattentive distribution of electrical current thereabout was not gross negligence, and the trial court did not err in overruling the demurrer.

It is next urged that wantonness was not within the issues. But the petition alleged—

"That the supplying of electricity and charging said wires' with a deadly current of electricity which were used to convey the electric current from said transformer, meter and switch to the electric motor on said sand boat, when said wires were not properly insulated and hung down very close to the water and into the water, where people were in the habit of swimming and bathing, all of which was well known to said defendants and to each of them, or should have been so known, was a dangerous, negligent, careless and improper mode or way of construction and maintenance, and was a nuisance and very dangerous to human life, all of which was well known to said defendants and to each of them. That said defendants and each of them were careless and negligent in so constructing and maintaining and operating said electrical apparatus and appliances and creating and maintaining said nuisance, as herein, set forth."

Such allegations, together with others pleaded to the same effect, were equivalent to a pleading of wantonness; and, moreover, the raising of such an issue enlarged the appellant's chances of defeating a recovery against it, for under this issue and the court's instructions the jury had to find wantonness or the verdict would have to be in favor of this defendant. This complaint is without merit.

Fault is found with instruction No. 18, which reads:

"However, you are further instructed that if you should find . . . that at the time such wires were installed, it was apparent to the officers or agents of said electric company, in making such installation, that such wires, on account of the manner of their installation, would fall out of repair and become dangerous to the extent contemplated by the instructions herein given defining wantonness, then said electric company would be bound to so control its electric current that it could not escape into such wires under circumstances such as would constitute wanton negligence on the part of the electric company as defined in these instructions."

A public stream is in material respects like a public highway, and electric power companies are held to a very high degree of care to see to it that people come to no mishap through the release or distribution of electric energy at such a place. The instruction

quoted was not erroneous. (*Electric-Light Co. v. Healy*, 65 Kan. 798, syl. ¶ 2, 70 Pac. 884; *Railway Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807; *Hoffman v. Power Co.*, 91 Kan. 450, syl. ¶ 2, 138 Pac. 632; *Wade v. Electric Co.*, 94 Kan. 462, syl. ¶ 1, 147 Pac. 63.)

The other instructions criticized by appellant have been examined, but no error can be discerned therein.

Exception is taken to the trial court's characterization of the unguarded switch and the uninsulated and sagging wires and the electric current passing through them as a mantrap. The expression was not inapt. While the word has an almost obsolete meaning as a device to catch thieves or other trespassers, yet it is also a colloquial word in common use (Webster's New International Dictionary, 1922 ed., 1314; *White v. Stock Yards Co.*, 104 Kan. 90, 91, 177 Pac. 522), and its use could neither have misled the jury nor prejudiced the appellant.

A majority of this court can discern no error in the record, and the judgment is therefore affirmed.

MARSHALL, and DAWSON, JJ., dissenting.