No. 28,299.

Elbert Baker and Ella Baker, *Appellees*, v. The Kansas Power and Light Company et al., *Appellants*.

(272 Pac. 101.)

Opinion filed December 8, 1928.

Thomas F. Doran, Clayton E. Kline, M. F. Cosgrove, all of Topeka, W. P. Waggener and J. M. Challiss, both of Atchison, for the appellants; O. P. May, of Atchison, and Harry W. Colmery, of Topeka, of counsel.

Paul Bailey, of Hiawatha, Arthur S. Brewster, of Troy, Bennett R. Wheeler, S. M. Brewster and John L. Hunt, all of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiffs recovered a judgment for $3,500 as damages for the death of their six-year-old daughter through the alleged negligence of the defendant power company.

The material facts developed by the allegations and admissions of the pleadings and by the evidence tended to show that the defendant, the Kansas Power and Light Company, owns an electric distribution system in Hiawatha, and that its wires are strung at a height of thirty feet and affixed to poles set along the streets and alleys of the city. The primary wires carry 2,300 volts. One such wire was strung in an alley back of plaintiffs' residence. On August 12, 1927, about noon, plaintiffs' small daughter was killed by coming in contact with defendant's wire which had broken and fallen to the ground. The break in the wire was about eight feet from the nearest pole. No witness saw the breaking of the wire nor the killing of the child. She was found lying on the wire on the ground. The insulation of the wire had become frayed and hung in shreds, leaving the bare wire exposed in many places. The electric current had burned off and partly consumed the child's right forearm; her left hand and forearm were charred; her chest was blistered and her side burned just below the ribs; and there were numerous other burns about her thighs and abdomen, and most of her clothing was consumed. The other facts in evidence chiefly dealt with the age of the wire, the feasibility of insulating it, the frequency of its inspection and the care given thereto, the short interval which elapsed between the time when the wire was delivering power and the time when the child's body was found upon the broken portion of it which lay on the ground. Other facts in evidence will be referred to, if necessary, as we proceed.

While no direct testimony was given touching the age of the wire, or whether it was new when first put up, it was shown that it had been hung for ten or twelve years, and that insulation is fairly good for fifteen or twenty years, and that the insulation on the wire which broke and killed this child had been hanging down in shreds "a foot or two" and that this defective condition of the insulation was visible from the ground thirty feet below. It was also shown that after the accident the broken wire was promptly repaired, and a section of the old wire about five feet long was removed and a piece of new wire inserted in its stead.

The first error assigned deals with the overruling of defendant's demurrer to the evidence. Can it be said as a matter of law that the facts summarized above did not make out a *prima facie* case of negligence against the defendant, and that the court should have taken it away from the jury? We think not. It was a fair question for a jury to decide whether or not it was negligence for the defendant to maintain a wire so old that its insulation, which ought to last fifteen or twenty years, was ragged and hanging down in shreds and strips of one or two feet in length. A jury might fairly say that the defendant either did know or should have known that its wire was so old that it was liable to break, and that if it did break its possibilities for mischief were great and obvious. In *Stone v. City of Pleasanton*, 115 Kan. 378, 233 Pac. 312, where the city was heavily mulcted in damages for injuries to a boy who came in contact with a guy wire charged with electricity from the city's power system, this court said that whether the mayor actually did know of the defective condition of the wire was not controlling; that—

"The circumstances were such that the jury would have been almost compelled to find that the city knew of the dangerous condition although all the living city officers testified that they knew nothing about it. Under the circumstances, their lack of knowledge would have justified the jury in finding negligence on the part of the city. *Ignorance of conditions may be negligence.*" (p. 382.)

In *Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442, a boy was killed by an electric shock from a power-wire strung thirty feet above the back yard where he was playing. The insulation had rotted in many places, leaving the wire bare. In some unknown way a small wire with a small stone at the end of it had been flung over the power wire, and the electric current found its way from the uninsulated power wire to the boy's body through the medium of the small wire flung over it. The plaintiff saw that the boy's clothing was ablaze and she rushed to his rescue, and received a severe electric shock which injured her. In an appeal from the judgment for damages in her favor it was contended, among other matters, that the defective insulation was not the cause of the lad's death. But this court said:

"It was the acknowledged duty of the defendant to insulate its wires. They were not insulated at the place of contact and had been unprotected for several years before the plaintiff was injured by the escaping current. . . . The current escaped from the control of the defendant through its neglect. It is clear that if the defendant's wires had been properly insulated the plaintiff would not have been injured." (p. 159.)

The court exhaustively reviewed earlier cases in this and other jurisdictions, and further said:

"It is conceded that a party who conducts so powerful and destructive an agency through the streets of a thickly populated part of a city is bound to exercise a degree of care commensurate with the dangerous character of the agency to protect those who may come in contact or even in close proximity with its wires. The highest care and utmost caution should be exercised for the safety of the public, including those engaged in business or play, and for the protection of thoughtless, curious and inexperienced children, as well as those who have reached maturity. [Citing cases.] To secure protection as against electric wires of dangerous voltage, it is essential that they should not only be safely placed but should be carefully covered with insulation to prevent the escape of the destructive current. Even ordinary care requires that the current should be confined, . . . The defendant's wires were insulated when the line was first constructed and were safe as against casualties such as befell the plaintiff, but the defendant failed to maintain these wires in that condition. It was a continuing duty of the defendant to keep its wires insulated, but it appears that the insulation had been broken and the wires had been partly bare for a long time. The defendant, therefore, must have known that the wires were uncovered, and the electric current unconfined at the place in question. As a result of its negligence in turning loose the deadly current in a busy section of the city, the plaintiff, to whom no fault can be attributed, was injured. . . . The highest care and utmost caution imposed by the law upon those handling this destructive agency require a sharp and searching inquiry into the occurrences and accidents that are not unlikely to happen from uninsulated high-voltage wires, and they should take into account the acts of children, of strangers, as well as the probable results of storms and high winds. The mere fact that the intervening act of another contributed towards the injury does not relieve the defendant of the responsibility for the original negligence of leaving the wires uncovered." (pp. 160, 161.)

The contention is made that the defendant's wires, including the one that broke and caused this child's death, were regularly inspected and that no defect was discoverable by such inspection. A jury might fairly conclude otherwise. It might infer that the hanging shreds of frayed strips of insulation was a fair warning to the defendant that its wires were aging to the point where common prudence required their replacement or at least their reinsulation. (20 C. J. 359-361.)

In *Electric Light Co. v. Healy*, 65 Kan. 798, 70 Pac. 884, a boy was killed by climbing over the railing of a viaduct and getting hold of an electric wire from which the insulation had rotted away. In affirming a judgment against the power company this court said:

"An electric company laid its wires on the viaduct of a city street, outside

but close to the traveled way, between which wires and way was a railing or balustrade over which small boys were in the habit of climbing and getting close to the wires. The wires were defectively insulated, of which fact and of the habit of the boys the company had knowledge. One of the boys, when in the act of climbing, was killed by coming in contact with the' uninsulated wires. *Held,* that the company is liable." (Syl. ¶ 2.)

If it was negligence subjecting the power company to damages for it to permit its wires to become uninsulated and dangerous to trespassers, it seems futile to debate the question of the liability of a power company which maintained the wire which killed Alberta Baker in the circumstances shown in this record. (See, also, *Burns v. Emporia,* 63 Kan. 285, 65 Pac. 260; id., 67 Kan. 523, 73 Pac. 94; *Railway Co. v. Gilbert,* 70 Kan. 261, 78 Pac. 807; *Lewis v. Street Railway Co.,* 101 Kan. 673, 168 Pac. 856; *Stone v. City of Pleasanton,* 115 Kan. 378, 223 Pac. 312; *Leavenworth Coal Co. v. Ratchford,* 5 Kan. App. 150, 48 Pac. 927; *Waller v. Heating Co.,* 9 Kan. App. 301, 61 Pac: 327.)

The demurrer to plaintiff's evidence was properly overruled.

The next error assigned pertains to 'the trial court's refusal to direct a verdict for defendant. That point merely presents from another angle the question embraced .in the court's ruling on the demurrer and needs no further discussion.'

Error is also assigned on the instructions to the jury, particularly Nos. 16 and 20. It is needless to reproduce them. No. 16 was a correct statement of law under the decisions of this court cited above, and the only thing wrong with No. 20 was that it was too favorable to defendant—a matter of which it cannot justly complain. No. 15 is also criticized, but it is substantially the same as No. 16 and well supported by pertinent excerpts from our own cases cited above, to which may be added *Winegarner v. Edison,* 83 Kan. 67, 109 Pac. 778; *Hoffman v. Power Co.,* 91 Kan. 450, 138 Pac. 632; *Wade v. Electric Co.,* 94 Kan. 462, 147 Pac. 63; id., 98 Kan. 366, 158 Pac. 28; *Logan v. Electric Co.,* 99 Kan. 381, 161 Pac. 659; *Followill v. Gas & Electric Co.,* 113 Kan. 290, 214 Pac. 430.

Defendant complains that the standard of duty required of defendant by the instructions was equivalent to saying that it was held to the same responsibility as an insurer, a rule not warranted by precedent or authority. In this jurisdiction the old grades of diligence and negligence are no longer recognized. In lieu thereof we have the standard of due care under the particular circumstances

(*Jones v. Railway Co.*, 98 Kan. 133, 136, 157 Pac. 599) ; and in the care and maintenance of power wires whose age impairs their tensile strength and which become uninsulated with the lapse of years, the highest degree of practical diligence is properly imposed, and nothing in the instructions given to the jury held defendant to anything beyond that standard.

Error is also urged on the trial court's refusal to give certain instructions requested by defendant. These emphasized the point that defendant was not an insurer of the safety of its electric wires strung along the streets and alleys of the city. We do not discern that any such contention existed in this lawsuit, and as the instructions given fairly covered the pertinent law of the case the refusal of those requested was not error.

The final error urged relates to the overruling of the defendant's motion for judgment on the special findings, which were—

"Q. 1. How long before Alberta Baker came in contact with the wire had it been.broken? A. We do not know.

"Q. 2. What caused the wire to break? A. We don't know.

"Q. 3. What notice, if any, did the defendant, the Kansas Power and Light Company, have of the fact that such wire had broken? A. They had none.

"Q. 4. What negligence, if any, do you find against the defendant, the Kansas Power and Light Company? A. Old wire and poor insulation."

It is argued that these special findings did not allege as a ground of negligence that the defendant had used old wire. The petition alleged defendant's breach of duty to maintain its wires in good condition and repair, "so that they would not become broken and so that they would not fall down and be in such a position that a child could come in contact with said wires while they were carrying a heavy voltage of electricity"; and "that said wires were not properly insulated and were not properly kept and maintained, all of which was known to the defendants or could have been known by the exercise of reasonable care." The finding No. 4 is about as responsive to that charge of negligence as a jury of laymen could be expected to make it. It is also contended that the special findings are inconsistent with each other. That does not appear. The fact that the jury did not know what caused the wire to break (finding No. 2) takes nothing from the force of finding No. 4. If the wire had not been old, mayhap it would not have broken, whatever may have been the immediate cause of its breaking; and if the insulation had not been poor the unfortunate child would not have met a death so shocking and inexcusable.

The judgment is affirmed.