No. 35,588

Philip H. Miller, *Appellant*, v. (Ralph Johnson) The Gas Service Company, *Appellee*.

(130 P. 2d 547)

Opinion filed November 7, 1942.

*John S. Haney,* of Hiawatha, argued the cause, and *Walker F. Means,* of Hiawatha, was on the briefs for the appellant.

*H. A. Russell,* of Topeka, argued the cause, and *Robert D. Garver,* of Kansas City, Mo., was on the briefs for the appellee.

The opinion of the court was delivered by

Hoch, J.: This was an action to recover damages for personal injuries suffered in a gas explosion in a hotel room occupied by the plaintiff. The defendants were the hotel operator and the gas company which supplied gas to the hotel. The gas company demurred to the petition. The demurrer was sustained, and plaintiff appeals.

The operator of the hotel is not directly involved in the appeal. The sole question is whether the petition stated a cause of action against the gas company.

The petition alleged that the defendant, Ralph Johnson, was the lessee, proprietor and operator of certain premises at 528 Kansas avenue, in Topeka, Kan., commonly known as the "Oxford Hotel"; that the hotel consisted of a number of suites of rooms and a number of single rooms, all of which were served with natural or artificial gas through "gas mains and pipes under the sole and exclusive control, supervision and management of the defendant, Johnson, his servants or employees"; that these mains or pipes afforded outlets in the various rooms whereto heating and cooking appliances were connected; that these appliances were installed and connected by the defendant Johnson, his servants, agents or employees by means of connecting tubing of a type commonly known as "flexible connecting tubing" and that at all times involved in the action "said heating appliances and said connecting tubing within said single rooms were under the sole and exclusive control, supervision and management of the defendant, Ralph Johnson, his servants, agents or employees." Further recital of the allegations as to Johnson is unnecessary. It was alleged that on the day in question large quantities of gas which had escaped and accumulated in the room occupied by the plaintiff exploded and inflicted severe burns upon him. It was alleged that the appellee, the Gas Service Company—

"*knew, or should have known,* that the aforementioned flexible connecting tubing was being used as aforesaid within said premises and knew, or should have known, that said type of connecting tubing is a faulty, unsafe, and highly dangerous type of connecting tubing due to the fact that the said gas has a deteriorating effect upon said tubing that results in sudden and dangerous leakage and escape of said gas, but that said defendant did, nevertheless, negligently, willfully, unlawfully, and without regard for the health and safety of the occupants of said premises, supply and continue to supply artificial or natural gas to said premises."

and that it "*knew* or *should have known* that such use of said tubing was contrary to and in violation of the above stated statute of the state of Kansas and the above stated ordinance of the city of Topeka," but that it "did, nevertheless, willfully, unlawfully and without regard for the safety and health of the occupants of said premises supply and continue to supply artificial or natural gas to said premises." Other allegations are not material to the instant issue.

There was no allegation that the "flexible connecting tubing" had deteriorated nor was it specifically alleged that the leakage resulted from deterioration or defect in the tubing or from faulty connection of the tubing with the pipe outlet. However, construing the petition most favorably to the plaintiff, we shall disregard any question that might be raised on that point and here assume that the petition sufficiently alleges that the use of the tubing was the cause of the leakage and the accumulation of gas, resulting—in some manner not set forth in the petition—in the explosion. We shall also pass over appellee's contention that the petition is defective because no actual deterioration in the tubing was alleged. We shall here treat the petition as alleging the use by defendant Johnson of gas connections which were of an unsafe character and of a type specifically prohibited by law for use in hotels or other such public building.

What then are the allegations as to the appellee? It is not alleged that "flexible connecting tubing" was used in the hotel rooms at the time the gas company turned gas into the hotel pipes; it is not alleged that at the time of the explosion nor at any other time the appellee knew that such tubing was being used by defendant Johnson; it is not alleged that appellee knew that there were any gas leakages in the hotel or that it had received any notice, or was in possession of facts which could be said to put it upon notice that such tubing was being used or that any leakages existed. It is not alleged that the appellee by word, act or conduct, had assumed any responsibility to inspect or supervise the gas appliances or gas connections within the hotel. Boiled down, the allegation is only that the appellee *"knew* or *should have known"* that flexible tubing was being used by defendant Johnson, that such tubing is dangerous in character and that its use by Johnson was unlawful.

Appellant's brief is predicated largely upon the assumption that the petition alleges that the Gas Company *"knew"* that flexible tubing was being used. But the petition does not so allege. Throughout the petition the allegation is that the appellee *"knew or should have known"* of the facts or conditions of which complaint is made. Such a pleading, in the alternative or disjunctive, must be given the construction, upon demurrer, least favorable to the pleader, or, as some writers express it, "must be treated by its weakest link." The general rule is—to put it another way—that such a pleading is only good as against demurrer if a cause of action is stated against the

opposite party under either averment. Where the pleader has no knowledge as to which of two sets of facts exists, a pleading in the alternative may be good provided liability would be stated under either set of facts. (41 Am. Jur. 317, par. 41; 49 C. J. 98.)

Under the rule the best that can be said for the petition, as against the gas company, is that it alleges the company "should have known" that Johnson was using flexible tubing. (*Greenfield Sav. Bank v. Abercrombie,* 211 Mass. 252, 97 N. E. 897, 39 L. R. A., n. s., 172; *Cornick v. Weir,* 212 Ia. 715, 237 N. W. 245; *Daniels v. Berry,* 148 So. Car. 446, 146 S. W. 420; *Dickason v. Dickason,* 84 Mont. 52, 274 Pac. 145.) Obviously a wholly different situation would be presented had actual knowledge by the gas company been pleaded. Such an allegation would have constituted a fact admitted by the demurrer.

How, then, are the words "should have known" to be construed? If they represent merely the pleader's conclusion, then the demurrer, admitting only facts well pleaded, does not admit the validity of the conclusion. As against demurrer the petition can be good only if it can be said, as a matter of law, that the gas company had a duty to know, at all times, whether faulty, dangerous or unlawful appliances or methods of installation were being used by Johnson. In other words, we would have to say that if Johnson at any time installed such appliances or connections, constructive knowledge that he had done so would be immediately imputed to the gas company. But that is not the law. (24 Am. Jur. 686, 687; 28 C. J. 594, 595; 29 C. J. S. 611, ¶ 57; *Hoffman v. Power Co.,* 91 Kan. 450, 461, 138 Pac. 632.) The affirmance of such a rule would impose impossible burdens. It would mean that a public utility company which furnishes gas, electricity or other such commodity or service to a building would be charged with knowledge, at all times, of the appliances or installations used or employed by the occupants. How could it protect itself, under such a responsibility? Even though it attempted the impossible task of inspecting every room, every day, that still would not relieve it from liability, under such a rule. The occupant might change appliances or the connections or alter the installations immediately after the company had made the inspection, and yet without any knowledge of such changes, the company would be liable for resulting injuries.

Instead of supporting the proposition that under the circumstances here involved knowledge would be imputed, the authorities cited by appellant support the view that liability attaches only if the com-

pany has actual knowledge of defects or leakages, or of the use of dangerous appliances or installations or has undertaken the responsibility of investigation or inspection or is in possession of facts which would suggest to a person of ordinary care and prudence the necessity of making investigation. For instance, appellant quotes from 24 Am. Jur. 686, as follows:

"If a gas company knows, at the time it turns on the gas, or after turning on the gas, *becomes aware, that there are defects in the pipes, or if the company is in possession of facts that would suggest to a person of ordinary care and prudence that the pipes in the building are leaking or are otherwise unsafe for the transportation of gas, the company is under a duty to make such an inspection or investigation* as a person of ordinary care and prudence, similarly situated and handling such dangerous agency, would make to ascertain the safety of the pipes, before it furnishes or continues to furnish gas through them." (Italics ours.)

The same rule is stated in 25 A. L. R. 272, cited in *Southern Indiana Gas Co. v. Tyner,* 49 Ind. App. 475, 97 N. E. 580, and quoted in appellant's brief, and in 12 R. C. L. p. 909, cited by appellant.

Our own cases, cited by appellant, are to the same effect. For instance, appellant cites the following from *Swayzee v. City of Augusta,* 113 Kan. 658, 216 Pac. 265:

"One who applies for gas has the duty to see that his own pipes through which the gas is to be used are in good order, and no general obligation on the part of the company can be inferred to inspect such pipes. But *if the company knows at the time it turns on the gas, or after turning on the gas becomes aware that there are defects in the pipes, it then becomes its duty to make a proper inspection* to ascertain the safety of the pipes before it furnishes or continues to furnish gas through them." (Italics ours.) (p. 663.)

A like rule is stated as follows in *Atkinson v. Wichita Gas Co.,* 136 Kan. 854, 18 P. 2d 127, cited by appellant:

"The handling of gas required prompt action on the part of the gas company, and it devolved upon that company *to exercise reasonable care to discover the source of the leak as soon as it received notice that gas was escaping, whether the leak was in the main or service pipes.* In a case where notice had been given of such a condition it has been said that 'It is immaterial in such case that the pipe where the leak occurred was owned by the consumer.' 28 C. J. 594." (Italics ours.) (p. 857.)

Other cases cited by appellant are to like effect.

Needless to say, the rule here followed is in no way in conflict with the many cases—including our own—and which need not be reviewed, wherein a utility company is held to a high degree of accountability for the maintenance and condition of its own wires or pipes,

and may be charged with knowledge of defects therein as a matter of law. (See *Snook v. City of Winfield,* 144 Kan. 375, 381, 61 P. 2d 101; *Baker v. Kansas Power & Light Co.,* 127 Kan. 109, 113, 114, 272 Pac. 101; *Jackson v. Kansas Gas & Electric Co.,* 152 Kan. 90, 95, 96, 102 P. 2d 1038.) No pipes, appliances or connections, owned, installed or inspected by appellee are here involved, and no notice of defects or possession of facts putting the company on such notice is alleged.

In his reply brief appellant frankly concedes that he has made no attempt to support the proposition that appellee "should have known," as a matter of law, of the alleged defects. He urges that the construction to be given the words "knew or should have known" was not argued in the trial court and that appellee's argument in support of the demurrer was based upon wholly different grounds. Here, for the first time, appellant says, did the appellee stress the point that the words "knew or should have known" do not constitute a pleading that it "knew." However that may be, if no cause of action was stated, the demurrer was properly sustained and it is not material on review what arguments were advanced below. (*Mc-Kenzie v. New York Life Ins. Co.,* 153 Kan. 439, 441, 442, 112 P. 2d 86, and cases therein cited.)

Again, appellant says in his reply brief that if a motion to strike the words "or should have known" had been made by appellee, those words would have been stricken. But the words were not stricken, and we cannot here exclude issues that are raised by the demurrer. Furthermore, the record discloses that appellant asked to have the journal entry sustaining the demurrer amended by inserting a statement that "the court finds that the plaintiff elects to stand upon his petition." While the amendment was not allowed, the motion indicates appellant's position, sustained by the record, that he did, for purposes of this appeal, at least, stand upon the petition and he did not ask leave to file an amended petition. Appellant further complains of not being given adequate opportunity, in the court below, for oral argument on the demurrer, though he admits that his brief submitted below "was late, perhaps unduly late." No purpose would be served by going into that matter. In no event could it determine the only issue here presented.

For reasons stated we find that the petition stated no cause of action against the appellee and that the demurrer was properly sustained.

The judgment is affirmed.