No. 36,184

Mable B. Moseley, *Appellee*, v. The Garden City Irrigation Power Company, *Appellant*.

(152 P. 2d 799)

Opinion filed November 4, 1944.

*William Easton Hutchison, C. E. Vance* and *A. M. Fleming,* all of Garden City, were on the briefs for the appellant.

*H. O. Trinkle, Ray H. Calihan* and *Roland H. Tate,* all of Garden City, were on the briefs for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for the death of plaintiff's husband through the alleged negligence of the defendant company.

It appears that defendant was engaged in the distribution of electric power to farms in Finney county. The late Fred Noel Moseley was a twenty-seven-year-old farmer who resided with his wife and three small sons on an eighty-acre farm in Finney county. He practiced irrigation farming. On his farm at some distance from his house was an electric power pole, at which defendant supplied electric power which passed through insulated wires enclosed in a metal conduit attached to the pole. At a point a few inches above the ground, the conduit had an elbow or coupling leading from the pole to a meter and thence to a motor which drove an irrigation pump. The motor was close to the electric pole, exact distance not shown, and the meter was between the pole and the motor.

Some installation or repair work had been done on the motor by an employee of defendant a few days before the accident of present concern.

On July 29, 1941, Fred Noel Moseley was at work on his farm. He did not return to his house at the dinner hour. After an hour's delay his wife went to seek him. She found him lying dead beside the electric power pole. A neighbor called a doctor who came and examined Moseley's body. Some neighbors and relatives also came, likewise the undertaker.

On the facts gleaned from the circumstances plaintiff brought this action on behalf of herself as Moseley's widow and on behalf of her children, alleging that the conduit on the electric light pole was not grounded; that the conduit was broken at the coupling where it carried the electric wires from the pole to the motor; that the insulation on the electric wires was worn and frayed so that the live copper wires were exposed through the break in the conduit, from which alleged negligence the cause of Moseley's death was deduced.

Defendant answered with a general denial and alleged that if Moseley met his death by coming in contact with the electric current it was the result of his own negligence and want of care; that whatever break existed in the conduit was caused by Moseley himself or by persons working for him; that the conduit and electric wiring were Moseley's property and under his control, and that it

was his duty to keep the same in repair; and that whatever break existed in the conduit was known to Moseley for some time prior to the accident, and was unknown to defendant; and that Moseley was well acquainted with the location of the pole, the conduit and the wiring, and knew that the wiring was charged with electricity; and that there was no necessity for him to come in contact with the pole, the conduit or the wiring, and that if he did he was guilty of negligence in so doing.

At the trial the evidence, of necessity, was circumstantial. Moseley's body was found close to the electric pole and conduit. His shoes were wet as if he had been in the irrigation ditch. The conduit was broken at the elbow. The insulation had deteriorated so that the copper wires could be seen through the break. The conduit was not grounded. Moseley's left hand showed indications of having been burned; likewise the left side of his face, and his feet; and the skin of his body had a tendency to slip when the undertaker was dressing his body for interment. These and other details made up the plaintiff's evidence. An evidential incident of some probative significance was that shortly after Moseley's death the broken conduit was replaced with another, and it was properly grounded at both of its ends.

The jury returned a general verdict for plaintiff. It also answered special questions thus:

"1. Was the death of Fred Noel Moseley caused by electric shock from contact of some part of his body with the conduit through which the electric wires were carried to the motor operating his irrigation pump? A. Yes.

"2. If you answer the foregoing question 1 in the affirmative, did the death of the said Fred Noel Moseley result from some defect in the electric lines or equipment by means of which the current was carried to the motor operating the pumping plant? A. Yes.

"3. If you find that the death of the deceased resulted from some defect in the electric lines or equipment by means of which the current was carried to the motor operating the pumping plant, then state of what such defect (or defects, if more than one) consisted. A. Broken conduit pipe and broken insulation on voltage wire.

"4. Did Fred Noel Moseley know of the break in the conduit prior to the date of his death? A. No; not enough to be dangerous.

"5. Did the defendant The Garden City Irrigation Power Company have actual notice or knowledge of the break in the conduit prior to the death of Fred Noel Moseley? A. No.

"6. Could the defendant by the exercise of that degree of care and diligence required of it in the circumstances of the case have discovered the break in the conduit and any dangers, if any, to be apprehended by it therefrom, prior to the death of the deceased? A. Yes."

Judgment was entered on the general verdict. Defendant assigns several errors the first of which relates to the testimony given by Moseley's father-in-law who visited the scene of the accident the same afternoon. This witness testified about the location of the electric pole, the conduit pipe, and he volunteered his opinion that when Moseley had come out of the irrigation ditch with his wet feet, "it was just right for him . . . to take hold of it [the conduit] with his left hand like that (indicating). The pole probably set that far from the bank (indicating). Of course, according to what they said, he just rolled over that way, and this hand would have held him and would have turned him if he had had hold of the pipe."

[Counsel for defendant]: "We object to this as incompetent, irrelevant and immaterial, and a conclusion of the witness."

[The Court]: "Overruled."

Defendant complains of the admission of this testimony. Granting that in part, at least, it was subject to the stated objection there was no motion to strike it out. Moreover, it was not incompetent *in toto,* and it was obligatory on defendant's counsel to particularize as to the incompetent matter which should be stricken out. It is not suggested that if a new trial were ordered on account of any part of this testimony and if the witness were required to refrain strictly from giving his opinion as to how his son-in-law met his death a different outcome of this action might be expected. The competent evidence in the case so clearly established the circumstances which caused the young farmer's death that this court would not be justified in holding the criticised testimony prejudicial (Civ. Code, § 581; G. S. 1935, 60-3317).

It is next contended that the court erred in its refusal to give the jury two instructions requested by defendant. The first of these would have told the jury that if the conduit and wires enclosed therein were the property of Moseley and part of the equipment of his pumping plant defendant would have had no duty to inspect them to ascertain whether the conduit was broken unless it had actual notice of the break. But there was no evidence that Moseley owned the conduit nor the wires which led the electric current through the meter to the motor which operated the pump. On the contrary it was shown that defendant had set the pole and installed the conduit with the enclosed electric wires. The meter was between the conduit and the motor, and the meter was owned by the defendant; and irrespective of the ownership of the conduit and wires leading to the meter, of necessity defendant must have exercised dominion over

them, and the evidence is clear that it did exercise such dominion. In *Snook v. City of Winfield*, 144 Kan. 375, 61 P. 2d 101, where the defense to an action for wrongful death through the negligent distribution of electric power was that the municipal utility which supplied the power did not own the wires which carried the electricity, we held that such fact did not relieve it of its responsibility for their proper inspection and maintenance. We said—

"The actual ownership of the distribution lines is comparatively unimportant insofar as liability is concerned. The principal thing is the control of its upkeep and repairs. Here, while it is true that Snook and Caldwell paid for the construction of this line, after it was constructed the city took charge of it for the purpose of distributing electricity over it. . . . It had taken out one transformer and put in another without saying anything to Snook or Caldwell about it, and at various times had made repairs necessary for the proper functioning of the electric current it sold them. . . . Even if one who generates and sells electricity does not own or control the wires or apparatus over which it is distributed or used the exercise of due care requires that it should not supply electricity over known defective wires or appliances." (pp. 381, 382.)

In *Baker v. Kansas Power & Light Co.*, 146 Kan. 258, 69 P. 2d 731, we held a gas distributing company to the same standard of responsibility in a case when it did not own the service pipes through which it supplied its gas to a customer.

See, also, 9 R. C. L. 1215.

Defendant also complains of the trial court's refusal to instruct that if the conduit and wires were the property of deceased it would have no duty for their proper maintenance. Defendant did plead that the conduit and service wires belonged to Moseley. But there was no evidence to that effect. Such evidence as was developed on that point was to the contrary, and, as we have seen, defendant's responsibility was properly predicated on its right of dominion, not on ownership. Under the general trend of decided cases, defendant's duty to its customer was to make frequent and careful inspection of the appliances through which its electric power was supplied to the motor which operated the irrigation system. Indeed the defendant could not well have made its periodical reading of the meter, which concededly was its property, without being aware of the defective conduit and its lack of ground wires, if it had given it even a casual inspection. (Jury's finding No. 6.) Moseley was aware of the broken conduit although he did not know enough about it to appreciate that a broken conduit was dangerous. (Jury's finding No. 4.) Moseley's duty to himself was fairly stated in the court's instructions which, in part, read:

"The duty of the deceased is governed by these principles, namely: The deceased was required to exercise the care of an ordinary prudent person acting under the same or similar circumstances. It was his duty to exercise that degree of care which the ordinary prudent person would be expected to exercise in the same or similar circumstances. It is claimed by the defendant that the deceased knew of the break in the conduit and that it was incumbent upon the deceased to have the break in the conduit repaired or notify the defendant of the condition so that it might repair it. In considering the responsibility of the deceased in regard to this circumstance it will be for you to determine and to consider what such a break in the conduit would mean to the ordinary prudent person; whether the ordinary prudent person in the same circumstances would have been apprehensive that there was danger involved from the break, and whether.or not the ordinary prudent person in the circumstances of the deceased would have notified the defendant of the condition."

Counsel for defendant direct our attention to *Miller v. Johnson,* 155 Kan. 829, 130 P. 2d 547, but in our view that case is scarcely analogous, and not nearly so helpful as *Baker v. Kansas Power & Light Co.,* to which we have already referred.

The other objections to the judgment have been carefully noted. There was indeed a stiff verdict, $10,000, but we have not been able to discern any sound basis for disturbing it, nor does any material error appear.

The judgment is therefore affirmed.