No. 35,762

MARGUERITE SANIK, *Appellee*; v. SHRYOCK REALTY COMPANY, *Appellant.*

(135 P. 2d 545)

Opinion filed April 10, 1943.

*J. O. Emerson,* of Kansas City, argued the cause, and *Fred Robertson* and *Edward M. Boddington,* both of Kansas City, were on the briefs for the appellant.

*Elmer E. Martin,* of Kansas City, argued the cause, and *David F. Carson, David W. Carson* and *Douglas Sharp,* all of Kansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

HOCH, J.: Plaintiff sought to recover damages for personal injuries received when she was struck by plaster falling from the ceiling in a building owned by defendant. The appeal is from an order overruling defendant's demurrer to the petition.

The alleged injury took place on June 22, 1940. The petition was filed on July 15, 1940. First, second and third amended petitions were subsequently filed following motions to make definite and certain. A demurrer to the third amended petition was sustained and on May 6, 1942, a fourth amended petition was filed. The defendant again moved to have the petition made definite and certain. The motion and subsequent demurrer were overruled and this appeal followed.

Plaintiff, Marguerite Sanik, alleged in substance that the defendant, The Shryock Realty Company, owned and operated a two-story building in Kansas City, Kan., with tenants occupying both

upper and lower floors, and was in complete control of the plumbing in the building; that the defendant "rented the lower floor of aforesaid building to one Gladys Stevens by written lease (dated May 25, 1940), a copy of which is attached"; that Gladys Stevens is the plaintiff's mother; that she and her husband lived with her mother in the lower part of the building; and that "the front part of said lower floor is used as a beauty shop and the rear part as living quarters for this plaintiff, her husband and Gladys Stevens"; that prior to the time that she and her mother moved into the building they placed furniture in the rear part of the building and that one Spaulding "an agent, servant and employee" of the defendant, "connected with the management of the aforesaid building," saw this furniture several times before the lease was executed and before she and her mother moved into the building; that she and her mother "manifested at that time" their intention to use' part of the lower floor, *rented by them* (italics supplied) as a living quarters" and that Spaulding "at no time made any objection of any kind"; that she and her mother and husband continued to occupy the premises as living quarters; that on June 18, 1940, a break in the water pipes or plumbing in the upper part of the building took place and that water began to leak into the ceiling of the room leased by her mother and occupied by her and her mother; that she called one Kelly, "an agent or employee of the defendant," notified him about the leak and that "a repair man" was sent who "stopped the water from coming down into plaintiff's apartment, approximately two hours after the leak began"; that the "repair man did know, or could and should have known" that the water leaking through the ceiling rendered the plastering on the ceiling "loose and likely to fall" but carelessly and negligently "failed to repair or bolster up" the plaster on the ceiling; that by reason of the fact that there were a number of tenants living in the building "rented by defendant *to this plaintiff's mother*" (italics supplied) and by reason of the further fact that the plumbing was installed as a unit in the whole building the defendant had a duty to maintain the plumbing and keep it in repair, and that the defendant "had the further duty imposed upon them by law" to see that the plumbing was free from defects; "that a part of the plumbing which broke and caused the leak was defective prior to the time the said leak occurred" and that defendant "did know or could and should have known" of such defect and should have repaired it.

Plaintiff further alleged that on June 19, 1940, Spaulding came and looked at the ceiling where the water had leaked through the ceiling and that at that time "there was a very slight bulge in the ceiling" and that Spaulding said that "said ceiling would be all right"; that he made no attempt to repair or have the ceiling repaired, although he informed the plaintiff and Gladys Stevens that the defendant would repair and redecorate the ceiling. Plaintiff further alleged that she and Gladys Stevens "relied upon said Spaulding's statement that said ceiling was all right and paid no further attention to said ceiling." Plaintiff then alleged: "although at the time said Spaulding looked at said ceiling, he did inform the plaintiff and the said Gladys Stevens that, as the leak was no fault of theirs and was in no wise under their control, that his principal, the Shryock Realty Company, would repair the said ceiling and redecorate the said ceiling. . . . That by reason of said Spaulding's statement to said Gladys Stevens and this plaintiff, and by reason of said repair man's carelessness and negligence in failing to extend his repairs from the plumbing to the damage occasioned by the plumbing and the plaster on the ceiling, and by reason of said Spaulding's carelessness and negligence in failing to repair or send anyone to repair said building, a part of the plaster at the point where the water had leaked through fell and struck this plaintiff on the head" at about 6:30 on the morning of June 22, 1940, something over two days after Spaulding had inspected the premises. For injuries thus suffered she asked damages in the amount of $3,000 which included $25 for doctor's fees and medicines and $80 for loss in salary covering one month's absence from work.

Defendant again filed a motion to make the petition definite and certain in many particulars, and to strike certain portions. Among other things he asked that the plaintiff be required to state under what authority she claimed to be an "occupant" of the building—whether as sub-lessee, assignee of the lease, or licensee; to state upon what facts she based her averment that the defendant was in control of the plumbing and obligated to repair it; to state whether she contended that Spaulding had any authority to consent to her occupancy of the premises; whether she contended that Kelly who repaired the plumbing had any authority to repair the ceiling or any other part of the building occupied by her; to state whether Spaulding had any authority to advise her that the ceiling would be all right or to make repairs to the ceiling, or to promise to do so;

to state whether, to plaintiff's knowledge, any portion of the plastering fell prior to the time when the piece fell and struck her; to state whether she relied upon Spaulding's statement that the ceiling was all right, up to the time when the plastering fell and struck her. The motion need not be further noted, in detail. Defendant submitted, in connection with the motion, an affidavit to the effect that in another action between plaintiff's mother and the defendant and growing out of the same incident there was testimony that some plaster fell prior to the time the plaster which struck the plaintiff fell and that she had full knowledge of that fact. The motion was overruled. The rule is well established that where a motion to make definite and certain is successfully resisted the pleading must thereafter, when tested by demurrer, be strictly construed against the pleader as to matters covered by the motion. (*Lofland v. Croman*, 152 Kan. 312, 316, 103 P. 2d 772, and cases there cited.)

It is clear, at the outset, that the petition is at least indefinite in its averments as to plaintiff's right to occupy the premises and to bring the action. She first alleged that the lower floor of the building was rented to her mother, under written lease—copy of which was attached. Elsewhere in the petition she referred to the building as being "rented by them"—meaning apparently her mother, herself and her husband—but nowhere was there any affirmative averment that the place was rented by them. The lease shows plaintiff's mother was the sole lessee and carries specific provision that the lessee will "not sublet or allow any other tenant to come in with or under him or assign this lease or any part thereof by his act, process or operation of law, or in any other manner whatsoever without the written consent of the lessor endorsed on this lease." Furthermore, plaintiff's mother covenanted as lessee "to take good care of the premises and keep them in good repair . . . and return the same, at the termination of the lease, in as good condition as received by him, usual wear and use . . . excepted." Under the terms of the lease, the part of the building leased was "to be used for the purpose of a beauty shoppe." It is obvious that plaintiff had no right of occupancy under the written lease. On the contrary, the lease specifically provided that the lessee should not sublet the premises or permit any other tenant to come in with her. Furthermore, even assuming the authority of Spaulding to lease the premises for the owner, the time when he saw the household furni-

ture set up in the rear part of the building and when she and her mother indicated their intention to use that part as living quarters was prior to the execution of the written lease. Under no view, therefore, could it be contended that the written lease was modified by any oral agreement. In any event defendant was entitled to have it made clear in the petition upon what alleged facts and circumstances she claimed a right of occupancy and an obligation by defendant to keep the premises in repair and safe condition as far as the plaintiff was concerned. Under the lease such obligation was upon plaintiff's mother and not upon defendant. Nor is the obligation shifted by a provision in the lease that the lessor may go upon the premises to make such repairs as he might deem necessary or proper.

What has already been said is sufficient upon which to determine the issue raised by the demurrer—particularly so in view of plaintiff's successful resistance to the motion to make definite and certain. However, let us examine the petition further in one or two aspects. There was no allegation that the repairs to the plumbing were not promptly made. Such repairs were made within two hours. More than that, failure to inspect or to repair the plumbing was not included in plaintiff's allegations of negligence upon which she predicated defendant's liability. She alleged that her injury resulted from "said repair man's carelessness and negligence in failing to extend his repairs from the plumbing to the damage occasioned by the plumbing and the plaster on the ceiling, and by reason of said Spaulding's carelessness and negligence in failing to repair or send anyone to repair said building." Nor—even assuming that appellant had an obligation to repair the ceiling—could it be said, as a matter of law, that the petition alleged an unreasonable delay in repairing the plastering. The leak occurred on June 19, and the plaster fell early on the morning of June 22. Furthermore, the allegation was that there was "a very slight bulge in the ceiling" when Spaulding looked at it on June 19. What he saw, plaintiff also saw.

We note, in conclusion, appellant's contention that the fourth amended petition is in no essential particular different from the third amended petition as to which a demurrer had previously been sustained and that therefore the instant demurrer should have been sustained under the doctrine of *res judicata*. Under our code a ruling upon a demurrer is appealable, whether the demurrer be sustained or overruled (G. S. 1935, 60-3302, *second*) and we have re-

peatedly held that a ruling upon a demurrer from which no timely appeal has been taken, becomes—under the general doctrine of *res judicata*—the law of the case. (*Hendricks v. Wichita Federal Savings & Loan Ass'n*, ante, p. 124, 126, 131 P. 2d 889; *Dwinnell v. Acacia Mutual Life Ins. Co.*, 155 Kan. 464, 470, 126 P. 2d 221; *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 150 Kan. 715, 717, 718, 96 P. 2d 608; *Wilson v. Messer*, 121 Kan. 254, 246 Pac. 674; *Hyatt v. Challiss*, 59 Kan. 422, 53 Pac. 467; 34 C. J. 797, 798.) (The preceding statement is not intended to bear upon right of review under G. S. 1941 Supp. 60-3314a.) The record here discloses that the demurrer to the third amended petition was sustained on April 16, 1942, with leave to amend. The plaintiff acquiesced in the ruling and filed the fourth amended petition on May 6, 1942. After motions to make definite and certain had been overruled the defendant filed a demurrer on July 31, 1942. The demurrer was overruled on August 6, 1942. While the record does not disclose the fact, it is a reasonable assumption that the trial court entertained the view that the amendments had fortified the petition as against demurrer. However, it is possible that the trial court concluded after further consideration that the former ruling was erroneous. Inasmuch as the result of this appeal is determined by what has already been said it is unnecessary to decide whether the doctrine of *res judicata* is applicable as to the prior order sustaining the demurrer. We may say, however, that we have carefully examined the amendments to the third amended petition and do not find them sufficient to fortify the petition as against demurrer. The amendments were to the effect that Spaulding informed the plaintiff that since the leak was no fault of hers and her mother's that the owner would repair and redecorate the ceiling; that the defendant had a duty to keep the plumbing free from defects and that a part of the plumbing was defective prior to the time the leak occurred and that the defendant knew "or could and should have known" of such defect. (As to the force and effect of an allegation that an adverse party "knew or should have known" certain facts, see *Miller v. Johnson*, 155 Kan. 829, 130 P. 2d 547.) In our opinion these amendments supplied no allegations of fact sufficient to cure defects in the petition, when considered in connection with the allegations theretofore made and in connection with the alleged negligence of the defendant upon which liability was predicated.

The judgment is reversed with directions to sustain the demurrer.