No. 44,163

UNA O. VAUGHAN, *Appellant* and *Cross-Appellee,* v. FRED E. J. HORNAMAN, RICHARD GRISWOLD, ROBERT L. KLEHR, RICHARD ERICKSON, CHARLES W. HESS, RAY HODGE, BLAKE A. WILLIAMSON, JAMES K. CUBBISON, DR. J. G. EVANS, JOE F. JENKINS, J. E. TOBIN, NORMAN C. CHRISTIANSEN and CITY WIDE MORTGAGE CO., INC., *Appellees* and *Cross-Appellants.*

(403 P. 2d 948)

Opinion filed July 10, 1965.

*John H. Fields,* of Kansas City, argued the cause, and *David W. Carson, John K. Dear, Ernest N. Yarnevich, John William Mahoney,* and *Joseph T. Carey,* all of Kansas City, were with him on the brief for the appellant and cross-appellee.

*John E. Blake,* of Kansas City, argued the cause, and *Bill E. Fabian, Robert E. Fabian,* and *John E. Blake, Jr.,* all of Kansas City, were with him on the brief for the Hornaman group of appellees and cross-appellants.

*Blake A. Williamson,* of Kansas City, argued the cause, and *J. O. Emerson, Donald A. Hardy, A. C. Cooke,* and *Sheldon M. Crossette,* all of Kansas City, were with him on the brief for the Williamson group of appellees and cross-appellants.

*Blake A. Williamson,* of Kansas City, *pro se.*

*Harry S. Roberts,* of Kansas City, argued the cause, and *A. C. Popham,* of Kansas City, Mo., was with him on the brief for appellee and cross-appellant, City Wide Mortgage Company, Incorporated.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by Una O. Vaughan from the trial court's order sustaining in part appellees' demurrers to her second amended petition wherein she claims to state causes of action for damages, for breach of fiduciary relationship, inducing breach of fiduciary relationship, slander and for malicious prosecution of a civil action, all allegedly committed by appellees pursuant to a conspiracy.

Demurrers were sustained on the basis that said petition did not state a cause of action on any ground except for the malicious prosecution of a civil action. By way of cross-appeal defendant appellees challenge the correctness of the trial court's order overruling the demurrers to the cause of action alleging malicious prosecution of a civil suit.

For convenience appellees, defendants in the district court, can be divided into three groups: Fred E. J. Hornaman, Richard Griswold, Robert L. Klehr, Richard Erickson, Charles W. Hess and Ray Hodge may be referred to as the Hornaman group; Blake A. Williamson, James K. Cubbison, Doctor J. G. Evans, Joe F. Jenkins, J. E. Tobin and Norman C. Christiansen may be referred to as the Williamson group; and City Wide Mortgage Company, Incorporated, may be referred to as City Wide.

A prelude to the instant case appears in *Hornaman v. Vaughan,* 191 Kan. 42, 379 P. 2d 257, wherein the Hornaman group brought suit against this appellant and others, to which the reader is referred for a more complete background. This is the proceeding upon which appellant based her cause of action for malicious prosecution.

On April 10, 1962, appellant filed her original petition to which appellees directed various motions as a result of which appellant filed her amended petition on October 20, 1962. On January 28, 1963, the trial court sustained appellees' demurrers thereto on the

ground that the amended petition did not state facts sufficient to state a cause of action. Appellant did not appeal from these orders. On March 6, 1963, she filed her second amended petition in which she alleges in substance that in her own right and through the estate of her deceased husband, William Lee Vaughan, she owns a majority of the permanent stock of the General Savings and Loan Association, namely, 145 of the 250 authorized shares; that she is and has been a member of the board of directors, secretary-treasurer and one of its active business officers; that prior to August 1, 1961, the minority stock was owned by the Williamson group together with one Grant Barcus, and the directors of said corporation were appellant, Charles C. Vaughan, R. J. Breidenthal, Barcus, and defendants Williamson, Evans, Jenkins, Tobin and Christiansen. She further alleges:

"5. Prior to the death of plaintiff's husband, William Lee Vaughan, Jr., on the 3rd day of March, 1960, said William Lee Vaughan, Jr., was a partner with the defendants Williamson and Cubbison in the practice of law in Wyandotte County, Kansas, and upon his death these two defendants were retained by the plaintiff to probate his estate and were the attorneys of record in said estate in the Probate Court of Wyandotte County, Kansas; that said defendants represented the Association in all matters requiring the advice and services of an attorney and further, they did represent the plaintiff individually and personally in all of her business and personal dealings requiring the services of an attorney, the plaintiff placing her complete trust and confidence in them and their judgment and advice. That as a result of the aforestated relationships the defendants Williamson and Cubbison owed this plaintiff a duty to honestly and faithfully reveal to the plaintiff any activities on their part which might adversely affect any of the plaintiff's rights.

"6. Under the by-laws of said Association as they existed during the months of August through December, 1961, the affairs of said Association were managed and controlled by a board of nine directors elected from and by the members at the annual meeting of the members; that pursuant to the same by-laws and the General Statutes of the State of Kansas each depositor was entitled to cast one vote at said annual meeting of members which was set by said by-laws for the first Thursday after the first Monday in January of each year. That from and after the organization of said Association in 1953, it was the custom and practice of the various boards of directors not to solicit proxies, and to give notice of annual meeting of members by publication, a practice authorized by the General Statutes of the State of Kansas; that as a result thereof very few if any depositors or borrowers other than those who also owned permanent stock ever voted at the annual meetings and it resulted that the holders of a majority of the permanent stock shares being present and entitled to vote, controlled the Association through their election of the directors. That all of the defendants, and particularly the defendants Williamson, Christiansen, Evans, Jenkins, Tobin, and Cubbison were aware of the aforesaid custom and practice. That plaintiff's husband before

his death, and with knowledge of and in contemplation of said practice and custom, had attempted to arrange his affairs so that upon his death the majority of the permanent stock shares of said Association, and thus effective control and management of the Association, would pass to the plaintiff, Una O. Vaughan, and furnish the said Una O. Vaughan, as his widow, and his minor children with a means of earning an income. That at the time of his death, plaintiff's husband was the record owner of 45 shares of the permanent stock of said Association and he also owned an additional 100 shares which were on the books of said Association in the names of other individuals but which stock certificates were signed in blank by the record owners thereof and found in plaintiff's husband's lock box after his death of his former law partner, the defendant Williamson. That his attempt to arrange his affairs in such a way that the control and management of said Association would pass to the plaintiff, consisted of leaving his entire estate, including the said 145 shares of permanent stock, to the plaintiff Una O. Vaughan. That under the provisions of his last will and testament, the plaintiff now has the entire right, title and interest in and to the aforesaid majority of the permanent stock of said Association. That the defendants Williamson and Cubbison as plaintiff's attorneys were at all times fully aware of these facts and that the major part of plaintiff's and the children's inheritance from their deceased law partner, the plaintiff's husband, was this majority interest in the permanent stock of said Association and further than said defendants knew the future welfare and income of plaintiff and her children depended almost wholly upon the future welfare and prosperity of said Association.

"7. That the par value of the permanent stock was and is $100.00 per share and each of the original subscribers of said stock paid $150.00 per share therefor at the time of the original purchase in 1953.

"8. That subsequent to March 1960, and prior to October 6, 1961, the exact time being unknown and therefore not stated, the defendants Williamson and Cubbison secretly and in violation of plaintiff's confidence and in breach of the fiduciary relationship which they owed to the plaintiff as her attorneys, conspired with the defendants Fred E. J. Hornaman, Richard Griswold, Robert L. Klehr, Richard M. Erickson, Charles W. Hess and Ray Hodge, and the defendant City Wide Mortgage Co., Inc., to sell the latter their positions on the board of directors of said Association and thus turn over to said defendants the complete operation, control and management of the General Savings and Loan Association and to oust plaintiff from her management and control of said Association. At the time of said conspiring, the defendants Williamson and Cubbison further agreed to deliver to the other defendants the entire minority stock of said association for a consideration which was greatly in excess of the true value of said stock and represented a consideration of their seats on the board of directors as well as for the stock. Said secret negotiations culminated in the signing of an agreement which was also kept secret from the plaintiff which is attached to the first amended petition on file herein as Exhibit 'A' and made a part hereof as though fully set forth. That the defendants, Jenkins, Tobin, Evans and Christiansen were drawn into said conspiracy and in pursuance of its objectives and purpose did thereafter actively and knowingly co-operate with and assist the defendants Williamson and Cubbison in attempt-

ing to achieve the illegal and fraudulent objective and purpose of said conspiracy by, among other things, agreeing to sell their stock according to the terms of the agreements; by signing letters addressed to the plaintiff requesting a meeting of the board of directors in order that they might complete the transfer of their positions on the board of directors to their co-defendants; by attending a meeting which was illegally called by the defendants on October 20, 1961, at which time defendant Klehr was purportedly elected to the office of director and voting for him; and by attending and participating in another such meeting illegally called by the defendants at which time they each resigned as directors and purportedly elected their other co-defendants to the office of director. That defendant City Wide Mortgage Co., Inc., did knowingly and purposely, and in furtherance of the objective and purpose of said conspiracy, advance money to some of the defendants for the purchase of the aforementioned minority stock. That all of the aforestated actions were illegal and in violation of this plaintiff's rights and to her damage as hereinafter set forth, and by virtue of the conspiracy herein set forth each of the defendants is liable for the acts of the others.

"9. That the sole objective and purpose of said conspiracy and the actions of the defendants in pursuance thereof was to make it possible for the defendants Williamson, Cubbison, Evans, Jenkins, Tobin and Christiansen to reap immediate and exorbitant profit, in excess of the true value, upon the sale of their minority stock interest in said Association and their positions on the board of directors of said Association to the defendants Hornaman, Griswold, Klehr, Erickson, Hess and Hodge with the agreement to thus deliver complete control and management of the Association *of the Association* to said defendants and the defendant City Wide Mortgage Co., Inc., in order that these latter defendants might manipulate the Association to their own personal advantage by, for example but not by way of limitation, selling the good seasoned loans out of the Associations' folio and using the Association as a dumping ground for sub-standard loans with minimum or insufficient security; that under date of November 9, 1961 the stock of the selling directors was transferred to the purchasing defendants; that on October 20, 1961 the defendant Klehr was purportedly elected to the office of director and on November 9, 1961 the remaining purchasing defendants were purportedly elected to the office of director.

"10. . . . That the defendants did, without probable cause and with a malicious intent unjustly to vex and trouble this plaintiff, file an action in the District Court of Wyandotte County, Kansas, Cause No. 9699-B, in an effort to force her to convey her majority stock interest in said Association to the defendants Hornaman, Griswold, Klehr, Erickson, Hess and Hodge, and thus insure their complete unfettered control of the Association and the exhorbitant and excessive profit of defendants Williamson and Cubbison, Evans, Tobin and Christiansen from the sale. . . . that said action has been brought in the names of defendant Hornaman, Griswold, Klehr, Erickson, Hess and Hodge on behalf of all of the defendants in an effort to coerce plaintiff into selling her majority stock interest and in pursuance of the objective and purpose of said conspiracy. Further that said action has terminated favorably to

plaintiff by virtue of the decision of the Supreme Court of the State of Kansas rendered March 2, 1963.

"11. That said action was brought and said defendants did make certain false and malicious statements in connection therewith and at the time thereof for the purpose of weakening and destroying the business, influence, financial credit and standing of plaintiff in violation of the plaintiff's rights and the express provisions of Kan. G. S., 1949, 21-2452 and to her damage as hereinafter set forth. That in May, 1961, the defendant Blake Williamson, spoke the following slanderous and defamatory words of and concerning this plaintiff, to-wit: 'I have no confidence in what she is doing.' 'Una doesn't know what she is doing.' 'I don't know why she doesn't stay at home, all she does is play around the window.' That at about the same time the defendant Joe F. Jenkins, spoke the following slanderous and defamatory words of and concerning this plaintiff, to-wit: 'Una doesn't know what she is doing.' 'She doesn't know anything about business.' That said statements were made in the furtherance of the objective and purpose of the conspiracy herein alleged, and that said statements were repeated from time to time from May, 1961, up until the aforementioned action No. 9699-B was filed.

"12. That as a direct and proximate result of the sale and ultimate transfer of the defendants' Williamson, Jenkins, Christiansen, Tobin, and Evans seats on the board of directors of the General Savings & Loan Association and their sale and ultimate transfer of their minority stock therein to the defendants Hornaman, Griswold, Klehr, Erickson, Hess and Hodge and their purported election to the office of director as aforesaid; and as a direct and proximate result of the breach of fiduciary duty and relationship in connection therewith and pursuant thereto all as aforesaid; that as a direct and proximate result of the filing, without any just or reasonable cause, of the action numbered 9699-B in the District Court of Wyandotte County, Kansas as aforesaid; that as a direct and proximate result of the false and malicious statements of the defendants made against her and the manner in which she has been conducting the business of said Association, in violation of plaintiff's rights and the express provisions of Kan. G. S. 1949, 21-2452 as aforesaid, the plaintiff has been hampered, hindered and harassed in the operation of the business of the said Association; she has been prevented from transacting her lawful and legal affairs as a director and the secretary-treasurer of said Association; her capacity and opportunity to earn a living for herself and her family in the savings and loan business has been diminished; she has been greatly injured in her personal standing and reputation; she has been greatly injured in her business standing and reputation; she has become physically and emotionally upset and suffered great anxiety and pain of mind; and her personal business has suffered and depositors have threatened to withdraw and have actually withdrawn funds from said Association, to her disadvantage individually and as holder of the permanent stock, all in and to her damage in the sum of $250,000.00.

"13. . . . That by reason of the wilfull, wanton and malicious nature of said acts, plaintiff is entitled to exemplary damages in the amount of $250,000.00."

The filing of this petition gave rise to what is described as a "plethora of motions, demurrers and special appearances," principal

of which was a motion, pursuant to K. S. A. 60-2608, to apply to the action parts of our former procedural act, namely, Article 3 pertaining to commencement and limitation of actions and Article 7 pertaining to pleadings. The trial court granted this latter motion, and thereafter sustained appellees' separate demurrers to appellant's second amended petition as to her purported causes of action based on breach of fiduciary relationship, inducing breach of fiduciary relationship and slander, and overruled them as to the alleged cause of action for malicious prosecution of a civil suit. From these rulings on demurrer the appeal and cross-appeal are perfected.

Appellant contends she has pleaded a cause of action as to all of the three torts allegedly committed by all appellees pursuant to a conspiracy to which the demurrers were sustained, namely, breach of fiduciary relationship, inducing breach of fiduciary relationship and slander. Appellees contend the second amended petition contained no material changes from the amended petition to which a demurrer was sustained on January 28, 1963, the ruling on demurrer thereby becoming a final order from which no appeal was taken, and that hence the matter is *res judicata*.

This principle of law is set forth in *Sanik v. Shryock Realty Co.,* 156 Kan. 641, 135 P. 2d 545, as follows:

"We note, in conclusion, appellant's contention that the fourth amended petition is in no essential particular different from the third amended petition as to which a demurrer had previously been sustained and that therefore the instant demurrer should have been sustained under the doctrine of *res judicata.* Under our code a ruling upon a demurrer is appealable, whether the demurrer be sustained or overruled (G. S. 1935, 60-3302, *second*) and we have repeatedly held that a ruling upon a demurrer from which no timely appeal has been taken, becomes—under the general doctrine of *res judicata*—the law of the case [citing cases]." (pp. 645, 646.)

It was recently applied in *Grohusky v. Atlas Assurance Co.,* 194 Kan. 460, 399 P. 2d 797, wherein a demurrer was sustained to plaintiff's amended petition and she thereafter filed a second amended petition which except for immaterial additional allegations was identical to her previous petition. This court said:

". . . on July 26, 1963, the trial court sustained the demurrer to the amended petition on the ground that plaintiff was not the real party in interest. Right or wrong—that ruling, from which no appeal was taken, became the law of the case (*Sanik v. Shryock Realty Co.,* 156 Kan. 641, 645, 646, 135 P. 2d 545; *Neuvert v. Woodman,* 185 Kan. 373, 378, 343 P. 2d 206) and, for all practical purposes, disposed of the law suit. Instead of appealing, plaintiff filed a second amended petition which, for all material purposes, was

identical to her two previous petitions. This being so, the court properly struck the second amended petition." (p. 462.)

This leads to a consideration of appellant's amended and second amended petitions. The trial court went over the two meticulously, line by line, and paragraph by paragraph, and in a well-considered memoranda opinion concluded there were no essential changes made in the second from the allegations of the first. We have done the same, noting the additions, deletions and enlargements in certain paragraphs which are otherwise identical, and we come to the same conclusion with respect to the purported causes of action for breach of fiduciary relationship and inducing breach of fiduciary relationship. Therefore, the ruling on the instant demurrer was correct under the doctrine of *res judicata.*

With respect to the slander cause of action, the amended petition stated only by way of vague indirection that someone had made false statements concerning her. She did not allege who made the statements, what the statements were, to whom or when they were made. In her second amended petition the deficiencies were partially supplied. (See ¶ 11 above-quoted.) She states the dates of such statements as being from May, 1961, up to the time of the filing of the Hornaman petition, No. 9699-B in the Wyandotte County District Court, which petition was filed December 4, 1961. Thus a cause of action for slander was stated for the first time, if at all, on March 6, 1963—the date of the filing of the second amended petition. This was approximately fifteen months after the alleged defamatory statements. The trial court had these facts before it and it concluded this cause of action was barred by the one year statute of limitations (G. S. 1949, 60-306, *Fourth*). Agreeing with the premises stated, we must, therefore, agree with the conclusion.

Turning now to the cross-appeal, appellees and cross-appellants argue the second amended petition failed to state a cause of action for malicious prosecution and that their demurrers should have been sustained. First they claim that since this court reversed the trial court in the action which was the basis of the malicious prosecution action (*Hornaman v. Vaughan,* supra) the plaintiff was left unmolested in her position as stockholder and officer and has not suffered any damages because nothing was taken from her. This argument is untenable because it overlooks certain elements of damages she seeks and which are proper in what is commonly known

as malicious prosecution of a civil action. (See Restatement of the Law, Torts, § 681.) Appellees cannot proscribe by demurrer any proper elements of damage pleaded. Necessarily she could not recover for any damage other than that sustained by her.

The Williamson group and City Wide urge that since they were not parties to the Hornaman suit, and City Wide further urges that since it was not a party to the written agreement the Williamson group and the Hornaman group respecting the transfer of stock and selection of directors, the malicious prosecution action will not lie against them. These arguments overlook the fact that a conspiracy among appellees is alleged.

In 15 C. J. S., Conspiracy, § 18, p. 1028, it is stated:

". . . where two or more persons enter into a conspiracy, any act done by either in furtherance of the common design and in accordance with the general plan becomes the act of all, and each conspirator is responsible for such act."

In *Nardyz v. Fulton Fire Ins. Co.,* 151 Kan. 907, 101 P. 2d 1045, this court quoted with approval from 15 C. J. S., Conspiracy, § 25, p. 1037, thus:

" 'An allegation of conspiracy becomes important only as it may affect the means and measure of redress. It may be pleaded and proved only in aggravation of the wrong of which plaintiff complains, or for the purpose of enabling him to recover against all the conspirators as joint tort-feasors, or for the purpose of holding one defendant responsible for the acts of his co-conspirators.' " (p. 911.)

The trial court considered that there was pleaded a conspiracy by all appellees to acquire appellant's stock wrongfully and that pursuant thereto the action No. 9699-B was maliciously filed in an effort to force conveyance of the stock. We agree, not being concerned here with what the proof may show.

Appellees point out that want of probable cause is an essential element to a cause of action based on malicious prosecution and they urge there was probable cause shown for the Hornaman group bringing suit No. 9699-B inasmuch as the trial court in that case ruled in part in favor of Hornaman. They cite and rely on a rule set forth in an annotation in 58 A. L. R. 2d 1418 (*Goldstein v. Sabella,* [Fla.] 88 S. 2d 910) as follows:

"In an action for malicious prosecution based on an eviction suit previously brought by the defendant against the plaintiff, the rendition in that suit of a judgment for the present defendant conclusively establishes the existence of probable cause for bringing the suit, notwithstanding reversal of the judgment

on appeal, in the absence of fraud, perjury, or other corrupt means in obtaining the judgment." (Headnote 1, p. 1419.)

There is a further qualification to this rule which is stated in 34 Am. Jur., Malicious Prosecution, 1964 Cumulative Supplement, § 57, as follows:

"The effect of a prior judgment or decree against a malicious prosecution plaintiff as evidence of probable cause may be counteracted or rebutted by showing that the judgment or decree was obtained by fraud, perjury, or other improper means, *or by showing that the judgment or decree was void, or that the court granting it had no jurisdiction.*" (pp. 124, 125.) (Our italics.)

Reference to the *Hornaman v. Vaughan* case, supra, reveals that for the reasons set forth therein, this court ruled that the trial court did not have jurisdiction either of the plaintiffs or the subject matter in that case. Hence the rule sought by appellees cannot be applied.

The Williamson group raises as an issue in their statement of points the question of the statute of limitations as to the malicious prosecution cause of action but does not mention it in their brief, hence it is deemed abandoned. Neither the Hornaman group nor City Wide mentions this issue in their statement of points and, although City Wide does mention it in their brief, it cannot be considered by this court. (Rule No. 6 [*d*], 191 Kan. xiv.)

Finding no error in the rulings of the trial court its orders are affirmed as to both the appeal and the cross-appeal.

APPROVED BY THE COURT.